# IN THE COURT OF APPEALS OF IOWA

---

No. 25-2213
Filed April 15, 2026

---

**In the Interest of T.G.-B., Minor Child,**

**D.G., Father,**
Appellant.

---

Appeal from the Iowa District Court for Black Hawk County,
The Honorable Michelle Jungers, Judge.

---

**AFFIRMED**

---

Andrew C. Abbott of Abbott Law Office, P.C., Waterloo,
attorney for appellant father.

Brenna Bird, Attorney General, and Tamara Knight, Assistant Attorney
General, attorneys for appellee State.

Nina Forcier of Forcier Law Office, P.L.L.C., Waterloo, attorney and
guardian ad litem for minor child.

---

Considered without oral argument
by Greer, P.J., and Schumacher and Chicchelly, JJ.
Opinion by Schumacher, J.

1

**SCHUMACHER, Judge.**

A father appeals the termination of his parental rights to his child,[1] challenging the sufficiency of the evidence supporting the grounds for termination and claiming termination is not in the child's best interests due to the closeness of the parent-child bond. Upon our review, we affirm.

## BACKGROUND FACTS AND PROCEEDINGS

This family came to the attention of the Iowa Department of Health and Human Services at the time of the child's birth in January 2024, when the mother and child tested positive for methamphetamine. The father, who is married to the mother, reported he had been substance free for a year. The family agreed to participate in a safety plan with the mother's contact with the child being supervised by the maternal grandmother, with whom the family resided.

The mother continued to acknowledge use of methamphetamine, and the parents reported they were trying to find a place of their own to live. Concerns of domestic violence between the parents were reported. The grandmother maintained the parents were no longer allowed in her residence due to their fighting and other issues, but the parents kept "coming back." The grandmother was concerned she could not assure the safety of the child. In July, the child was adjudicated in need of assistance, removed from the parents' custody, and placed in foster care.

A dispositional order entered in October noted the mother continued to use methamphetamine. The father was incarcerated on domestic-abuse and possession-of-controlled-substance charges for an incident the month

---

[1] The mother's parental rights were also terminated. She does not appeal.

prior,[2] as well as probation violations. A no-contact order was in place between the parents. The court ordered in part:

> The parents shall complete substance abuse and mental health evaluations . . . and comply with all recommendations for substance abuse and/or mental health treatment. The parents shall comply with any requests for random drug testing. I[f] the No Contact Order is lifted and the parents intend to be in a relationship, they shall participate in couple's counseling.

The father was released from jail in January 2025, and he began living in a residential correctional facility. The department's March report to the court noted the father was scheduled to participate in weekly supervised visits with the child, during which he "appear[ed] to struggle at understanding the child's needs." The father passed his drug tests for probation and participated in a methadone-treatment program. The mother was in jail. The parents maintained an off-and-on relationship. The father supported the child's placement with the mother in treatment when she was released from jail. But the father stated that if the child could not be returned to the parents' custody, he wanted her to be placed with his mother in North Carolina.[3]

By July, the department reported "[t]he parents have a long history of domestic violence and have yet to participate in couple's counseling." Neither parent had housing. The father was not participating in mental-health counseling, but he continued to participate in an addiction-treatment program. The State initiated termination-of-parental-rights proceedings.

---

[2] In January 2025, the father pled guilty to possession of methamphetamine, third offense, and possession of marijuana, third offense. He was also convicted of domestic abuse assault, second offense.

[3] A home study for the paternal grandmother was denied.

The termination hearing took place in October. The mother was in jail. The father had obtained housing and was employed, working in the evenings. The father's weekly drug tests for his probation officer continued to be negative, but the father failed to comply with the department's requests for random drug tests. But he allowed a sweat patch test to be applied on September 29, which was positive for methamphetamine. The father attended about half of his scheduled visits with the child, averaging one visit per week. The visits remained fully supervised. The father acknowledged that "[a]t the outset of this case," he was "not available to participate in service[s] due to his own legal troubles." He denied using methamphetamine. But he acknowledged using marijuana, explaining that it "may have been laced with something else." He requested the State's petition be dismissed.

The department and the guardian ad litem recommended termination of parental rights. The court entered an order terminating both parents' rights under Iowa Code section 232.116(1)(d) and (h) (2025). The father appeals.

## STANDARD OF REVIEW

We review termination-of-parental-rights proceedings de novo. *In re A.B.*, 957 N.W.2d 280, 293 (Iowa 2021). Our primary consideration is the best interests of the child. *In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006). The defining elements of our best interests' analysis are the child's safety and need for a permanent home. *In re H.S.*, 805 N.W.2d 737, 748 (Iowa 2011).

## ANALYSIS

In general, when reviewing termination-of-parental-rights cases, we follow a three-step analysis, asking whether (1) a statutory ground for termination is satisfied, (2) the child's best interests are served by

termination, and (3) a statutory exception applies and should be exercised to preclude termination. *See In re L.B.*, 970 N.W.2d 311, 313 (Iowa 2022); *see also* Iowa Code § 232.116(1)–(3). Yet "[w]e do not address any steps not raised by a parent." *In re L.A.*, 20 N.W.3d 529, 532 (Iowa Ct. App. 2025) (en banc).

## I.     Statutory Grounds for Termination

The district court terminated the father's parental rights on two statutory grounds, but we may affirm if one ground is supported by the record. *In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012). We focus on section 232.116(1)(h), which entails our review of the father's challenge to the court's determination that the child could not safely be returned to his custody. *See* Iowa Code § 232.116(1)(h)(4) (requiring the State to show by clear and convincing evidence that the child could not be returned safely to the custody of either parent at the time of the termination hearing).

The father tested positive for methamphetamine less than a month before the termination hearing. He acknowledged a history of methamphetamine use but denied recent use. The court did not find his testimony to be credible. The father's "active and unaddressed methamphetamine use precludes a finding that the child can be safely returned to h[is] custody." *In re A.T.*, No. 25-0057, 2025 WL 1452862, at *3 (Iowa Ct. App. May 21, 2025). Moreover, "the father has not progressed past fully supervised visits, which in and of itself prevents an immediate return of custody." *Id.* (cleaned up). On this issue, the district court found:

> Clear and convincing evidence exists that the child cannot be returned to the care of . . . the father at this time or at any time in the near future. Despite the numerous services that were offered to the parents, which included Family Centered Services, supervised visitation, referrals for substance abuse and mental health evaluations and treatment, random drug testing, SafeCare, domestic violence services, parent partner and other community based services; no parent has been willing or able to

utilize the services offered and no parent has been able to demonstrate that they are capable of meeting the needs of a child.

We concur with the court's assessment that the child could not be returned to the father's custody at the time of the termination hearing.

## II.    Best Interests

The father also claims that termination was not in the child's best interests. To determine best interests, we "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2).

The father maintains termination is not in the child's best interests due to the "significant bond" he shares with her. The department caseworker testified it was "obvious that [the father] loves his daughter" and "he tries really hard to parent her." Even so, she did not believe the father's bond should deter termination because "he doesn't show up consistently" to visits. She further explained that she was unable to recommend increasing visits because he was "not being honest" about his substance use.

Even considering the existence of a bond between the father and the child, we conclude termination of his parental rights is in the child's best interests. *See L.A.*, 20 N.W.3d at 535 (considering impact of the parent-child bond on the "child's mental and emotional conditions and needs when making a best-interests determination). "The defining elements of the best-interests [analysis] are child's safety and need for a permanent home." *In re B.S.*, No. 20-1643, 2021 WL 609093, at *1 (Iowa Ct. App. Feb. 17, 2021) (cleaned up). The child has been out of the father's custody for fifteen out of twenty-two months of her life. By all accounts, she is happy and thriving with her foster family, which includes a younger foster sibling "she's very bonded

with." The family is a concurrent placement. Under these facts and circumstances, we concur with the court's conclusion that "[b]ecause of the child's age, the mother's and father's history of substance abuse concerns and unmet mental health needs, [and] domestic violence in the relationship," termination of parental rights is in the child's best interests.

We affirm the termination of the father's parental rights.

**AFFIRMED.**